# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

RODNEY A. LARSON,

            Plaintiff,

v.

LORI DOEHLING,
D. DORNBROOK,
K. NAGLE,
DONALD A. JONES,
DENNIS JENNINGS,
ROBIN MATTHEIS,
JODINE DEPPISCH,
CHRIS RAUCH, and
MICHAEL DITTMANN,

            Defendants.

Case No. 10-CV-797-JPS

**ORDER**

      The plaintiff, a former Wisconsin state prisoner, filed this pro se civil rights complaint under 42 U.S.C. § 1983. He is proceeding in forma pauperis on an Eighth Amendment deliberate indifference to a serious medical need claim, based on allegations that the defendants delayed his dental care. The defendants have filed a motion for summary judgment which will be addressed herein.

**1.    Summary Judgment Standard**

      "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir.

2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

2. **Factual Background**[1]

    2.1 **Parties**

---

[1] This section is taken from the Defendants' Proposed Findings of Fact. The plaintiff states in his response brief that he disagrees with the majority of the defendants' proposed findings of fact. However, the plaintiff has submitted no evidence in support of his assertions, rather he simply states, "Disagree." Civil Local Rule 56(b)(2)(B)(i) requires a litigant responding to a motion for summary judgment to include "a reproduction of each numbered paragraph in the moving party's statement of facts followed by a response to each paragraph, including, in the case of any disagreement, specific references to the affidavits, declarations, parts of the record, and other supporting materials relied upon." *See also* Fed. R. Civ. P. 56(c)(1). The plaintiff has not cited any admissible evidence in support of his disagreements and, therefore, the defendants' proposed facts are undisputed for the purpose of their summary judgment motion.

The plaintiff, Rodney Larson, was an inmate in the custody of the Wisconsin Department of Corrections (DOC) at all times relevant. The defendants are: Donald Jones, formerly employed as a dentist at Green Bay Correctional Institution (GBCI); Dennis Jennings and Chris Rausch, previously employed as dentists by the DOC; Lori Doehling, Health Services Manager in the Health Services Unit (HSU) at Redgranite Correctional Institution (RGCI); Michael Dittmann, RGCI Warden; Dan Dornbrook and Robin Mattheis, previously employed as offender classification specialists at Dodge Correctional Institution (DCI); Kathy Nagle, corrections classification management supervisor at DCI at all times relevant; and Jodine Deppisch, formerly employed as offender classification assessment and evaluation director at DCI.

### 2.2 Dental Treatment

The plaintiff was admitted to the DOC at DCI on November 19, 2008. The Health Transfer Summary received from the Winnebago County Jail noted the following dental issues: a lost bridge in the upper front of his mouth and an infection in an upper tooth. HSU staff performed an Inmate Screening/Medical History and noted that the plaintiff denied any urgent dental problems but complained of a toothache. HSU staff also completed an admission evaluation for medical clearance for county jails and recommended medical clearance for transfer for approximately 90 days.

On December 1, 2008, DCI dentist Craig Rosenthal, who is not a defendant, examined the plaintiff and scheduled him for extraction of teeth #6 and #9. Dr. Rosenthal saw the plaintiff the following day for the extraction but the plaintiff refused the treatment, noting that he was leaving custody in six months. On December 3, 2008, Dr. Rosenthal completed a Dental

Page 3 of 16

Case 2:10-cv-00797-JPS    Filed 08/14/12    Page 3 of 16    Document 53

Classification Report classifying the plaintiff's treatment needs status as "35" for essential dental needs with an acute episode was likely within six months. On December 22, 2008, HSU staff performed a follow-up evaluation for medical clearance for county jails and recommended medical clearance for up to 120 days.

The plaintiff submitted a Dental Service Request (DSR) dated April 27, 2009, stating that he wanted an abscessed tooth removed. The next day, Dr. Jones examined the plaintiff and noted that he presented with draining to the root of tooth #6. When Dr. Jones recommended extraction, the plaintiff stated he would "live with it." (Jones Aff. ¶ 18, Ex. 101 at 13). Dr. Jones interpreted this to mean that he was refusing the extraction.

The plaintiff submitted a Health Service Report (HSR) on June 2, 2009, requesting medication to "eliminate a severely infected tooth" stating, "Please provide medication and when that infection is taken care of, maybe have my tooth pulled. Someone told me that the tooth can't be pulled until the infection is gone." (Jones Aff. ¶ 19, Ex. 101 at 31). The plaintiff noted that he did not need to see health service staff. He submitted a DSR on June 4, 2009, again requesting medication to "eliminate a severely infected tooth." Dr. Jones responded to the plaintiff's requests on the same day, informing him an appointment was being made and the infected tooth needed to be removed. On June 5, 2009, Dr. Jones removed the abscessed tooth (#6). Dr. Jones could not then provide the plaintiff with partial dentures, however, the partial dentures were not a medical emergency or an immediate medical need at that time. Dr. Jones had no further involvement in the plaintiff's claims.

The plaintiff submitted a DSR dated August 13, 2009, requesting dentures for "4 teeth…so [I] can eat better and look normal." (Jennings Aff. ¶ 10, Ex. 101 at 32.) Dr. Jennings responded the following day and informed him that he was on the wait list.

On September 23, 2009, the plaintiff submitted a DSR requesting an appointment to be fitted for dentures. Dr. Jennings responded the next day and informed the plaintiff that he was on the denture wait list and that he would be called in when his name reached the top of the list. The plaintiff was released from DOC custody on November 3, 2009, before his name reached the top of the denture wait list.

On December 22, 2009, the plaintiff was admitted to DOC custody on a new sentence. The Health Transfer Summary received from the Brown County Jail noted no special needs or dental issues. HSU staff performed an Inmate Screening/Medical History, noting that the plaintiff alleged an urgent dental need for dentures as he had four missing front teeth and it was difficult to eat, but he refused a soft diet. No additional dental complaints were noted. HSU staff completed an admission evaluation for medical clearance for county jails and assigned a recommended medical clearance for approximately 90 days. This document allowed the plaintiff to be housed at a county jail for up to 90 days while in DOC custody.

The plaintiff submitted a DSR dated December 29, 2009, requesting dentures. On January 6, 2010, Dr. Rosenthal performed an intake oral exam, recommended extraction of tooth #9 and a partial denture, and discussed treatment needs with the plaintiff. Dr. Rosenthal completed a Dental Classification Report, classifying the plaintiff's treatment needs status as "20"

for routine or chronic dental needs with no acute episode likely within the next six months.

The plaintiff submitted a DSR dated February 7, 2010, requesting extraction of tooth #9, stating that the dentist told him to get the tooth pulled in preparation for a partial. The following day, Dr. Rosenthal informed the plaintiff that he had been put on the list for the extraction. On February 11, 2010, HSU staff performed a follow-up evaluation for medical clearance for county jails and recommended medical clearance for up to 120 days.

The plaintiff submitted a DSR dated May 19, 2010, requesting an appointment for an extraction of his tooth. Staff responded on May 21, 2010, informing the plaintiff that he was placed on the essential wait list for the extraction. The plaintiff submitted another DSR dated May 19, 2010, stating he was missing four top/front teeth which DCI staff had begun to fix; he asked to have the four teeth replaced. Staff responded to his request on May 21, 2010, noting that he had been placed on the denture wait list. The plaintiff submitted a DSR dated May 21, 2010, requesting dentures. He stated that his dental problem is getting worse "because now, my bottom 4 teeth must be shaved to make room for the replacement top 4 teeth." (Rauch Aff. ¶ 23, Ex. 101 at 53.) The plaintiff wanted to know when he could expect to "get my turn on the denture waiting list." *Id.* Dr. Jennings responded on May 24, 2010, informing him that he was on the essential wait list and would be seen to evaluate his concerns.

The plaintiff submitted a DSR dated May 23, 2010, stating that he had one filling which needed treatment because it had become "painful." (Rauch Aff. ¶ 25, Ex. 101 at 54.) The next day, Dr. Jennings informed the plaintiff

that he was on the essential wait list and would be seen to evaluate his concerns.

On June 21, 2010, Dr. Rauch examined the plaintiff and removed tooth #9. Dr. Rauch noted no complications and prescribed ibuprofen.

On July 14, 2010, the plaintiff submitted a DSR stating his extraction had healed completely and requesting an appointment for dentures. Dr. Rauch responded on July 16, 2010, and informed him that he was on the waiting list and would be called in turn.

On August 16, 2010, Doehling received an Interview/Information Request from the plaintiff along with a copy of an offender complaint regarding "neglect" by dental staff. (Am. Compl., Exs. 37-39.) In his offender complaint, the plaintiff alleged that on or around October 9, 2008, he developed a tooth infection while confined at the Winnebago County Jail and no dental services were offered other than aspirin and "anti infection" medication. He also claimed after he arrived at DCI on November 19, 2008, DCI staff noted that he had essential dental needs. The plaintiff further stated that despite these noted dental needs, DCI staff sent him to:

> two jail contracts for a total of roughly 7 months, which, jail contracts, had no dental care to meet my "essential dental needs." I have been trying to have my teeth fixed for the past nearly two years with no treatment to fix the problem. Now, as the DCI dentist indicated to me, my bottom four teeth are growing crooked in an attempt to fill in the gap that the missing four teeth has caused them to do. Now, instead of my four top teeth needing attention still, my bottom teeth, as the dentist indicated, will either need to be shaved down or pulled all-together to enable a denture to be placed in the top four teeths' [sic] position. . . . This complaint is to let you know of this situation and the "neglect" by HSU dental which has caused damage which has been significant. I would like to get

my dentures and to have my tooth looked at which is still infected.

(Am. Compl., Ex. 37.)

After receiving the offender complaint, Doehling consulted dental staff. Doehling responded to the plaintiff on August 16, 2010, noting that he did not mention that he had been seen by dental staff after each of the DSRs he listed in his offender complaint. Doehling further noted that after the plaintiff's transfer to RGCI, he had been placed on the "Essential Dental Needs List on May 21, 2010, had a tooth extraction performed on June 21, 2010, and was placed on the wait list for partial dentures." (Am. Compl., Ex. 40.) Doehling informed the plaintiff he was on the list at RGCI.

On December 21, 2010, Dr. Rauch performed an oral exam of the plaintiff, restored teeth #1 and #18, and started the denture impressions. Dr. Rauch saw the plaintiff on February 7, 2011, for shade matching for the dentures. The plaintiff refused to allow Dr. Rauch to prepare his teeth (mouth preps) for the cast frame partial denture. Dr. Rauch explained that this would limit the ability to provide the plaintiff with a functional denture, but that he would make an acrylic denture just so he had his front teeth replaced for esthetics. Dr. Rauch prepared a statement that reiterated the rationale for the mouth preps for the plaintiff to sign. He refused the mouth preps and would not sign the statement.

On February 28, 2011, Dr. Rauch inserted an acrylic upper partial that was "esthetic only." He reminded the plaintiff to avoid firm foods on front teeth due to the susceptibility of the partial denture to break. The reason for this was the fact that the plaintiff refused the mouth preps. Dr. Rauch had no further involvement in the plaintiff's claims.

The plaintiff's refusal to follow the dentists' recommendations delayed and limited the care he received. Throughout his dental care at RGCI, the scheduling of appointments was based upon prioritizing the needs of the entire inmate population and DOC requirements for waiting for healing following extraction and completion of all restorative dentistry before providing prosthetics.

Between the June 21, 2010 extraction and the August 13, 2010 Interview/Information Request with attached complaint, the plaintiff did not submit any DSR/HSR requesting treatment for a tooth infection and made no complaints of a tooth infection. To a reasonable degree of medical certainty, the plaintiff was provided with appropriate medical care and was not denied medical care resulting in further injury or infliction of pain.

### 2..3 Institution Transfers

The plaintiff began his sixth period of adult incarceration when he was placed in DOC custody at DCI on November 19, 2008. On December 15, 2008, Dornbrook reviewed the plaintiff's custody classification as the Program Review Committee (PRC). Dornbrook noted that the plaintiff had a health classification of "35," Essential Dental Needs but HSU staff had approved temporary placement at the county jails for no longer than 120 days. Based on review of the plaintiff's offense, sentence history, program participation, security needs, medical needs, and institutional behavior, *see* Wis. Admin. Code § DOC 302.07, Dornbrook recommended medium custody with transfer to RGCI with temporary custody at one of three county jails. Nagle reviewed Dornbrook's findings and approved his recommendations on December 22, 2008. The plaintiff did not appeal this decision. He was transferred to the Sauk County Jail on January 21, 2009. Other than the

December 15, 2008, review, Dornbrook and Nagle had no involvement in this matter.

On March 17, 2009, the plaintiff returned to DCI before being transferred to RGCI on March 18, 2009. He was again seen for review by the PRC on April 15, 2009, where the PRC recommended the plaintiff for medium custody at the GBCI, which was approved on April 16, 2009. The plaintiff again returned to DCI on April 22, 2009, before being transferred to GBCI on April 24, 2009. He was released from DOC custody on November 3, 2009.

The plaintiff began his seventh period of adult incarceration when he was placed in DOC custody at DCI on December 22, 2009. On February 3, 2010, Mattheis reviewed his custody classification as the PRC. Mattheis noted that the plaintiff had a health classification of "20," Routine or Chronic Dental Needs, but HSU staff had approved temporary placement at county jails for no longer than 120 days. Based on the review of the plaintiff's offense, sentence history, program participation, security needs, medical needs, and institutional behavior, *see* Wis. Admin. Code § DOC 302.07, Mattheis recommended medium custody with transfer to one of three medium-security prisons, with a temporary custody with "Other Wisconsin Contract" or DCI. Deppisch reviewed Mattheis's findings and approved the recommendations on February 3, 2010. The plaintiff did not appeal the decision. He was transferred to Manitowoc County Jail on February 12, 2010.

On May 14, 2010, the plaintiff returned to DCI before being transferred to RGCI on May 19, 2010. He was released from DOC custody on July 18, 2011. Other than the February 3, 2010, review of the plaintiff's custody classification, Mattheis and Deppisch had no further involvement in

this matter. He did not have a classification of "essential dental needs" during this review.

Pursuant to Wisconsin Administrative Code § DOC 302.04, the purpose of a custody classification is to determine the appropriate placement of an inmate in order to regulate the supervision and movement of inmates among institutions and between institutions and community centers. The classification and placement procedures provide for the exercise of informed discretion in considering individual differences among inmates, their offenses, their institutional records, their institutional needs, their security needs and risk, and their abilities to comply with the rules.

### 2.4 Dittman Allegations

Dittmann received an Interview/Information Request from the plaintiff dated January 12, 2011, with an attached copy of his motion to the federal court regarding a civil rights claim. To Dittmann's knowledge, he did not receive any correspondence and/or information from the plaintiff on or around December 20, 2010, regarding a potential civil lawsuit about dental issues. To Dittmann's knowledge, he did not receive any correspondence and/or information from the plaintiff prior to his Offender Complaint RGCI-2011-126 dated December 30, 2010 and received by the Inmate Complaint Examiner on January 3, 2011, regarding a potential civil lawsuit regarding dental issues. Although Dittmann has the general supervisory authority over RGCI operations as provided in the Wisconsin Statutes, he does not supervise the day-to-day operations of individual DOC institutions or employees.

### 3. Discussion

The defendants contend that not all of the plaintiff's dental claims constitute serious medical needs and that, even if he did have a serious medical need, they were not deliberately indifferent to it. The plaintiff contends that defendants were deliberately indifferent to his serious dental needs because they did not begin working to provide him with partial dentures until he filed this lawsuit. He further contends that Dr. Rauch attempted to get him to "sign a waiver of liability 'after' the damage had already taken place when portions of [the plaintiff's] teeth were shaven off in an attempt to hide the amount of [his] teeth that were permanently removed due to said deliberate indifference." (Pl.'s Resp. Br. at 1.)

A deliberate indifference claim requires both an objectively serious risk of harm and a subjectively culpable state of mind. *Edwards v. Snyder*, 478 F.3d 827, 830 (7th Cir. 2007); *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). A deliberate indifference claim based on inadequate medical treatment requires, to satisfy the objective element, a medical condition "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Edwards*, 478 F.3d at 830 (quoting *Greeno*, 414 F.3d at 653). The subjective component of a deliberate indifference claim requires that the prison official knew of "a substantial risk of harm to the inmate and disregarded the risk." *Greeno*, 414 F.3d at 653 (citing *Farmer*, 511 U.S. at 834). Mere medical malpractice or a disagreement with a doctor's medical judgment is not deliberate indifference. *Edwards*, 478 F.3d at 830-31 (citing *Estelle v. Gamble*, 429 U.S. 97, 107 (1976); *Greeno*, 414 F.3d at 653; *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261 (7th Cir. 1996)). Yet,

a plaintiff's receipt of some medical care does not automatically defeat a claim of deliberate indifference if a fact finder could infer the treatment was 'so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate' a medical condition. *Id.* (citing *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996)).

Tooth decay can constitute an objectively serious medical condition because of pain and the risk of infection. *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010) (citing *Board v. Farnham*, 394 F.3d 469, 480-81 & n.4 (7th Cir. 2005)). In addition, in *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001), the court held that an inmate had a serious medical need for his dentures where he alleged that he had been "unable to chew his food without his dentures, significantly impeding his ability to eat, and that he has suffered bleeding, headaches, and 'disfigurement.'" *See also Cooper v. Schriro*, 189 F.3d 781, 783-84 (8th Cir. 1999) (reversing dismissal of complaint where prisoner alleged defendants refused to treat his decayed and cracked teeth); *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998) (reversing dismissal of complaint where prisoner alleged extreme pain, deterioration of teeth and inability to eat properly); *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989) (reversing grant of summary judgment for defendants where prisoner alleged that prison's refusal to replace his lost dentures led to bleeding and infected gums, brittle teeth, and pain due to his inability to eat properly).

Here, the plaintiff had dental needs requiring the extraction of several teeth which qualifies as a serious medical need under the relevant case law. His need for partial dentures for his four top front teeth is a closer call as he did not allege an inability to eat associated with his need for dentures.

Page 13 of 16

Case 2:10-cv-00797-JPS    Filed 08/14/12    Page 13 of 16    Document 53

Indeed, he refused a soft food diet. However, the plaintiff does aver that, as a result of the delay in obtaining dentures, his four bottom teeth needed to be shaved down to make room. (Am. Compl. ¶ 14.) While the plaintiff was diagnosed with a condition mandating treatment, his condition was not as serious as those described above and medical staff did not classify as urgent his dental treatment needs. In any event, it is not necessary to decide whether the plaintiff's need for partial dentures was a "serious medical need" under the Eighth Amendment because the undisputed facts reveal that the defendants were not deliberately indifferent.

As indicated, the plaintiff claims that the defendants were deliberately indifferent because he did not receive his partial dentures in a timely manner. He characterizes the delay as extending over two years because he arrived in DOC custody in October or November of 2008, and Dr. Rausch began preparation for the dentures in December 2010. However, during this time span three different dentists saw the plaintiff for multiple appointments. He received dental care and he refused dental care. In addition, he was released from DOC custody for about a month and a half.

The plaintiff's first incarceration extended from November 19, 2008, until November 3, 2009. Upon arrival at DCI, he denied urgent medical problems and complained of a toothache. He was cleared for a jail transfer for 90 days. On December 1, 2008, Dr. Rosenthal conducted a dental exam and scheduled extraction of teeth #6 and #9 but the plaintiff refused the treatment. On December 22, 2008, HSU staff recommended medical clearance for county jail up to 120 days. In April 2009, the plaintiff filed a DSR requesting removal of tooth #6 and the next day, Dr. Jones drained the root and recommended extraction but the plaintiff said he would "live with

it." The plaintiff filed another DSR about tooth #6 on June 2, 2009, and on June 5, 2009, Dr. Jones removed the tooth. At that appointment, Dr. Jones also determined that the plaintiff did not have an immediate medical need for partial dentures. In August 2009, the plaintiff filed a DSR requesting a partial denture for his fourth front top teeth so could eat better and look normal. Dr. Jennings notified the plaintiff that he was placed on the wait list for dentures. However, on November 3, 2009, and before reaching the top of the list, the plaintiff was released from DOC custody.

The plaintiff remained out of custody for about one and a half months and on December 22, 2009, he was admitted to DOC custody on a new sentence. His initial health screening indicated a medical clearance for county jails for 90 days. On January 6, 2010, Dr. Rosenthal examined the plaintiff and recommended partial dentures and extraction of tooth #9. At the same time, he classified the plaintiff's treatment status as "20" for routine or chronic dental needs, with no acute episode likely within six months. One month later, the plaintiff filed a DSR requesting extraction of tooth #9 and Dr. Rosenthal responded that he was on the wait list for extraction. On February 11, 2010, HSU evaluated the plaintiff for medical clearance for county jails and he received medical clearance for 120 days. The plaintiff filed several DSRs in May 2010, requesting a tooth extraction, dentures, and a filling. Dr. Rauch pulled tooth #9 on June 21, 2010. Almost a month later, on July 14, 2010, the plaintiff requested an appointment for dentures, stating his extraction had healed completely. He filed his Interview/Information Request with Doehling on August 16, 2010. On December 21, 2010, Dr. Rauch restored teeth #1 and #18, and started the denture impressions.

Page 15 of 16

Case 2:10-cv-00797-JPS   Filed 08/14/12   Page 15 of 16   Document 53

No evidence supports the plaintiff's assertion that the delay in receiving the dentures was the result of deliberate indifference. Rather, the delay was caused in part by the need to have tooth #9 extracted and healed first. Although the plaintiff transferred to a county jail in between January 2010, when Dr. Rosenthal recommended dentures, and December 2010, when Dr. Rauch began the process (from February 12, 2010 until May 14, 2010), HSU staff medically cleared the plaintiff for such a transfer. Moreover, the recommendation for extraction of tooth #9 and the dentures were not classified as essential or urgent dental needs. The plaintiff was placed on the wait list and had to wait his turn. In sum, the plaintiff has provided no evidence to establish that his dental needs were urgent or that the defendants were deliberately indifferent to them. Accordingly,

**IT IS ORDERED** that the defendants' motion for summary judgment (Docket #38) be and the same is hereby **GRANTED**, and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED** on its merits with prejudice**.**

The Clerk of the Court is directed to enter judgement accordingly.

Dated at Milwaukee, Wisconsin, this 14th day of August, 2012.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge